## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **NONBELIEF RELIEF, INC.,**<br>**P.O. BOX 448**<br>**MADISON, WI 53701-0448,**<br><br>**Plaintiff,**<br>**v.**<br><br>**DAVID J. KAUTTER, Acting Commissioner**<br>**of the Internal Revenue Service,**<br>**1111 CONSTITUTION AVENUE, N.W.**<br>**WASHINGTON, D.C. 20224,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No. 18-CV-2347** |

## COMPLAINT

The Plaintiff, as its Complaint against the Defendant, alleges as follows:

1.     The Plaintiff seeks a declaration and determination that the preferential information filing exemption for churches and certain other religious organizations and affiliates under § 6033 of the Internal Revenue Code violates the Establishment Clause of the First Amendment to the United States Constitution.

2.     The Plaintiff's tax-exempt status was revoked in violation of the Establishment Clause based on burdens not imposed on churches, their integrated auxiliaries and conventions or associations of churches.

3.     The Plaintiff requests the Court to enjoin the Defendant from allowing such preference to churches and other affiliated religious organizations; to reinstate Plaintiff's tax

exempt status while enjoining Defendant from requiring annual information filing of Plaintiff; and to grant such further relief as the court deems just and equitable.

4.      The Plaintiff was incorporated and recognized as a tax-exempt 501(c)(3) non-profit organization, which must file detailed and expensive annual reports to maintain tax-exempt status, but such reports are not required for churches and certain other affiliated religious organizations or auxiliaries in order to remain tax-exempt.  (*See* Exhibit 1, Application for Recognition of Exemption.)

5.      The Internal Revenue Service denied Plaintiff's request for a determination that it be excused from filing an information return comparable to the exemption for churches and other religious organizations.

6.      The Plaintiff's tax-exempt status was revoked by the Internal Revenue Service on or about August 20, 2018, retroactive to May 15, 2018, for failure to file an annual information return for three consecutive years.  (*See* Exhibit 2, Letter of Revocation.)

7.      The Plaintiff has suffered and will suffer harm, detriment and disadvantage as a result of the revocation of its tax-exempt status, including tax liabilities and loss of charitable donations which are no longer tax-deductible by donors.

8.      The Plaintiff receives donations that are used to make charitable grants, but donors have been, and will continue to be, deterred by the loss of tax-deductibility.

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 with respect to the relief sought against the Defendant, from whom no damages are sought.

10.     The Court also has the authority to issue declaratory relief under 28 U.S.C. § 2201.

11.     The Court has the authority to award injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65.

12.     The United States has waived sovereign immunity, pursuant to 5 U.S.C. §702, for actions that seek specific relief other than money damages.

13.     Venue is appropriate in the District Court for the District of Columbia, where the Defendant has his principal office.

## PARTIES

14.     The Plaintiff, NonBelief Relief, Inc., was incorporated in 2015 and has operated at all times consistent with the requirements of § 501(c)(3), except for the filing of annual information returns.

15.     Plaintiff has acted at all times consistent with the exemption to filing information returns under 26 U.S.C. § 6033, which applies to churches and other religious organizations, including integrated auxiliaries.

16.     The Plaintiff is a humanitarian agency organization created by the Executive Board of the Freedom From Religion Foundation as a separate 501(c)(3) non-profit for nonbelievers and their supporters to improve conditions in this world, including by seeking to help remediate conditions of human suffering and injustice on a global scale, whether the result of natural disasters, human actions or adherence to religious dogma.

17.     Relief given by the Plaintiff is not limited to, but includes, assistance to individuals targeted for nonbelief, secular activism, or blasphemy.

18.     The Plaintiff helps fill, in part, an unmet need by providing help to nonbelievers who find themselves imperiled or threatened because of their nonreligious views, writings, or activism.

19.     Many charities exist for believers, but previously none adequately met the needs of nonbelievers who are increasingly targeted for their atheism, apostasy, or blasphemy; the Plaintiff helps fills this void.

20.     The Plaintiff's giving is not inspired by a bible or other purported holy book, or by the desire for a heavenly reward; the Plaintiff's giving is inspired by the wish to "make the world better," in the words of the 19th century American feminist Lucy Stone.

21.     The Plaintiff has made grants since its inception in 2015 totaling at least $592,888, through August 31, 2018.

22.     The recipients of charitable donations from the Plaintiff include:

> 2015: Charitable Donations totaling $68,910
>     $24,410 Doctors Without Borders
>     $20,000 World Food Program USA
>     $2,500 Second Harvest Foodbank of Madison
>     $12,000 Occupy Madison, Inc.
>     $10,000 Camp Quest, Inc.
>
> 2016: Charitable Donations totaling $146,000
>     $25,000 Women's Medical Fund
>     $58,500 Secular Underground Railroad to assist 13 individuals
>     $10,000 World Food Program USA
>     $10,000 National Center for Victims of Crime
>     $10,000 Foundation Beyond Belief
>     $10,000 Livingston Parish Public Schools
>     $20,000 Doctors Without Borders
>     $2,500 Second Harvest Foodbank of Southern WI
>
> 2017: Charitable Donations totaling $224,008.75
>     $25,000 Women's Medical Fund
>     $5,000 International African American Museum
>     $40,000 World Food Program USA
>     $10,000 Open Doors for Refugees
>     $20,000 UNICEF United States Fund
>     $1,000 Boys & Girls Club - Grand Rapids MN
>     $998.75 FFRF Sacramento Chapter - Life vest donation
>     $10,000 Greater Houston Community Foundation
>     $33,010 Secular Underground Railroad to assist 7 individuals
>     $2,500 Neighborhood Clinic
>     $2,500 Second Harvest Foods - Florida
>     $2,500 Women's Fund - Miami Dade
>     $10,000 Population Services International (PSI)
>     $10,000 Remote Area Medical
>     $5,000 Direct Relief
>     $3,000 Penn. Freethought Organization Coalition
>     $10,000 Team Rubicon
>     $10,000 Foundation for Puerto Rico

$10,000 Americares
$10,000 Doctors Without Borders
$1,000 FFRF Portland Chapter - Food bank donation
$2,500 Ateistas de Puerto Rico


2018: Charitable Donations, as of 8/31/18, totaling $153,970
$27,500 Secular Underground Railroad to assist 5 individuals
$10,000 Foundation Beyond Belief
$4,000 for legal defense for an Ex-Muslim atheist whose father
pressed bogus charges because she left religion
$10,970 Camp Quest
$5,000 Ultra Violet Action
$5,000 Violence Policy Center
$10,000 Afghan Women's Fund
$20,000 Doctors Without Borders
$25,000 Women's Medical Fund
$1,000 Boys & Girls Club - Grand Rapids MN Chapter
$1,000 Cascade Locks Food Bank - FFRF Portland Chapter
$10,000 Syrian American Medical Society
$10,000 Oxfam America
$2,500 Alliance for Period Supplies
$10,000 RAICES
$1,000 American Village - FFRF Kentucky
$1,000 WIND and Mustard Seed School - FFRF Sacramento
Chapter

23.     The Defendant, David J. Kautter, is the Acting Commissioner of the Internal

Revenue Service, with a principal address of 1111 Constitution Ave., N.W., Washington, D.C.

20224.

24.     The Defendant is sued in his official capacity.

## FACTS

25.     Federal law provides significant and valuable tax benefits to non-profit charitable

organizations, like the Plaintiff, under §501(c)(3) of the Internal Revenue Code.

26.     The benefit of having §501(c)(3) status includes exemption from payment of

federal income taxes and eligibility to receive tax-deductible charitable contributions from

individuals; these benefits are significant and incentivize charitable giving.

5

27.     However, all organizations recognized as tax-exempt under §501(c)(3), except churches and certain affiliated religious organizations, generally must file an annual information return, required by § 6033(a)(1), in order to maintain their tax-exempt status.

28.     The Internal Revenue Service uses annual information returns, known as Form 990, to monitor continued qualification for tax-exempt status under 26 U.S.C. § 501(c)(3).

29.     The annual information return requires significant disclosures be made, including:

> (b)     Certain     organizations     described     in     section
> 501(c)(3)Every organization described   in section   501(c)(3) which   is
> subject to the requirements of subsection (a) shall furnish annually
> information, at such time and in such manner as the Secretary may by forms
> or regulations prescribe, setting forth –
>
>> (1) its gross income for the year,
>> (2) its expenses attributable to such income and incurred within
>> the year,
>> (3) its disbursements within the year for the purposes for which it is
>> exempt,
>> (4) a balance sheet showing its assets, liabilities, and net worth as of
>> the beginning of such year,
>> (5) the total of the contributions and gifts received by it during the
>> year, and the names and addresses of all substantial contributors,
>> (6) the names and addresses of its foundation managers (within the
>> meaning of section 4946(b)(1)) and highly compensated employees,
>> (7) the compensation and other payments made during the year to
>> each individual described in paragraph (6),
>> (8) in the case of an organization with respect to which an election
>> under section 501(h)is effective for the taxable year, the following
>> amounts for such organization for such taxable year:
>>
>>> (A)   the lobbying   expenditures (as   defined   in section
>>> 4911(c)(1)),
>>> (B) the lobbying nontaxable amount (as defined in section
>>> 4911(c)(2)),
>>> (C)   the grass   roots   expenditures (as   defined   in section
>>> 4911(c)(3)), and
>>> (D) the grass roots nontaxable amount (as defined in section
>>> 4911(c)(4)),
>>
>> (9) such other information with respect to direct or indirect transfers
>> to, and other direct or indirect transactions and relationships with,
>> other organizations described   in section   501(c) (other   than
>> paragraph (3) thereof) or section 527 as the Secretary may require

6

to prevent –

> (A) diversion of funds from the organization's exempt purpose, or
> (B) misallocation of revenues or expenses,

(10) the respective amounts (if any) of the taxes imposed on the organization, or any organization manager of the organization, during the taxable year under any of the following provisions (and the respective amounts (if any) of reimbursements paid by the organization during the taxable year with respect to taxes imposed on any such organization manager under any of such provisions):

> (A) section 4911 (relating to tax on excess expenditures to influence legislation),
> (B) section 4912 (relating to tax on disqualifying lobbying expenditures of certain organizations),
> (C) section 4955 (relating to taxes on political expenditures of section 501(c)(3) organizations), except to the extent that, by reason of section 4962, the taxes imposed under such section are not required to be paid or are credited or refunded, and
> (D) section 4959 (relating to taxes on failures by hospital organizations),

(11) the respective amounts (if any) of –

> (A) the taxes imposed with respect to the organization on any organization manager, or any disqualified person, during the taxable year under section 4958 (relating to taxes on private excess benefit from certain charitable organizations), and
> (B) reimbursements paid by the organization during the taxable year with respect to taxes imposed under such section, except to the extent that, by reason of section 4962, the taxes imposed under such section are not required to be paid or are credited or refunded,

(12) such information as the Secretary may require with respect to any excess benefit transaction (as defined in section 4958),
(13) such information with respect to disqualified persons as the Secretary may prescribe,
(14) such information as the Secretary may require with respect to disaster relief activities, including the amount and use of qualified contributions to which section 1400S(a) applies,
(15) in the case of an organization to which the requirements of section 501(r) apply for the taxable year –

7

(A) a description of how the organization is addressing the needs identified in each community health needs assessment conducted under section 501(r)(3) and a description of any such needs that are not being addressed together with the reasons why such needs are not being addressed, and
(B) the audited financial statements of such organization (or, in the case of an organization the financial statements of which are included in a consolidated financial statement with other organizations, such consolidated financial statement).

(16) such other information for purposes of carrying out the internal revenue laws as the Secretary may require.

30.     Churches, their integrated auxiliaries, conventions or associations of churches, and the exclusively religious activities of any religious order, are all statutorily exempted from the requirement to file a Form 990.

31.     The Plaintiff was a qualified non-profit organization recognized under §501(c)(3) as tax exempt until revocation of that status on or about August 20, 2018, for failure to file Form 990 for three years; the effective revocation date is retroactive to May 15, 2018.

32.     The Plaintiff is not a church or an integrated auxiliary of a church so the Internal Revenue Service deemed the Form 990 requirement to be compulsory.

33.     The time and resources expended in preparing the annual information filing, including the expense of engaging a certified professional accountant to prepare and file the required Form 990, must be borne by non-religious organizations like the Plaintiff, but not by churches and church-related organizations.

34.     Form 990 requires disclosures that provide information to the public that facilitate informed decision-making, but that purpose is not unique to non-religious charitable organizations; the Plaintiff objects to having to file Form 990 while churches and church-related organizations do not.

35.     Form 990 requires organizations to provide information regarding the organization's mission, activities, and financial results.

36.     Form 990 additionally requires reporting of each organization's new, ongoing and/or discontinued exempt purpose, achievements, and reports of revenue and expenses.

37.     Form 990 also requires organizations to provide information about donations and whether donations are spent on programs or management and fundraising.

38.     Form 990 requires statements of revenue and functional expenses, as well as organizational balance sheets, comprising the financial statements of the organization, to be filed each year.

39.     The Defendant's preferential exemption of churches and certain other affiliated religious organizations from the required information return is not neutrally available to other tax-exempt organizations, including the Plaintiff.

40.     The preferential treatment of churches and certain other affiliated religious organizations by the IRS, under the direction and control of the Defendant Kautter, directly benefits churches and other religious organizations, while discriminating against other non-profit organizations, including the Plaintiff, solely on the basis of religious criteria.

41.     Requiring non-religious charitable organizations to file Form 990 is not uniquely necessary to the efficient administration of the Internal Revenue Code.

42.     The preferential treatment of churches and affiliated religious organizations results in obligations imposed on secular non-profits, including the Plaintiff, that are not imposed on churches; the benefits of tax exempt status also are denied to the Plaintiff as a penalty, including the loss of otherwise tax-deductible donations from donors.

43.     The discriminatory revocation of the Plaintiff's §501(c)(3) status provides churches and other affiliated religious organizations a competitive advantage in fundraising and charitable giving solely because they operate under the guise of religion, and despite the similar activities of the Plaintiff as a nonreligious charitable organization.

44.     The Plaintiff was created as an organization for nonbelievers to undertake charitable activities, consistent with their being as charitable, if not more charitable, than the religious.

45.     Churches and certain affiliated religious organizations receive a substantial advantage by not having to file the annual Form 990 information return.

46.     The preferences given by the IRS to churches and affiliated religious organizations are not available to the Plaintiff or other non-profit organizations, all to their detriment, which preferences permeate the Internal Revenue Service's treatment of § 501(c)(3) organizations.

47.     In fact, the Internal Revenue Service, under the Defendant's direction, preferentially does not enforce against churches even requirements that are facially applicable to churches and affiliated religious organizations.

48.     In addition to the information return required by § 6033 of the Internal Revenue Code, other requirements also are imposed to maintain § 501(c)(3) status, including restrictions on political campaign activity; restrictions on lobbying activities; payment of taxes imposed on unrelated business income; restrictions on inurement of benefits to private shareholders or controlling individuals; and operation of non-profit organizations in accord with their stated exempt purposes.

49.     Churches and affiliated religious organizations are not statutorily exempt from the multiple requirements to maintain tax-exempt status, except for the information return requirement.

50.     Failure to comply with any of the requirements to maintain tax-exempt status may result in the loss of § 501(c)(3) status, as for instance the enforcement against the Plaintiff of the information return requirement.

51.     The Internal Revenue Service, however, does not enforce all of the tax-exempt requirements against churches and affiliated religious organizations, including at least the prohibition on direct or indirect participation in, or intervention in, any political campaign on behalf, or in opposition to, any candidate running for public office.

52.     Churches openly and notoriously ignore and violate the prohibition on partisan politicking, which the Internal Revenue Service, in turn, ignores.

53.     The restriction on political campaign intervention facially applies to all § 501(c)(3) organizations, including churches and affiliated religious organizations.

54.     Many churches, nonetheless, are quite deliberate and open in their defiance of the politicking prohibition, including with organized and coordinated annual "Pulpit Sundays," of which the Internal Revenue Service is well aware.

55.     The Internal Revenue Service, however, does not enforce the politicking prohibition against churches, to such an extent that President Donald Trump's spiritual advisors, Paula White and Terri Copeland Pearsons, eldest daughter of Kenneth Copeland, recently engaged in open and explicit partisan politicking from the pulpit.

56.     Ms. White and Ms. Copeland, on or about September 18, 2018, expressly urged the congregation at Eagle Mountain International Church to "vote red . . . without any fear that the IRS is going to take away your right to donate to this church and deduct it from your taxes."

57.     The Internal Revenue Service, in fact, does not enforce the restriction on political intervention against churches.

58.     Thus, while the Internal Revenue Service enforces the requirements to maintain § 501(c)(3) status against non-religious charitable organizations, like the Plaintiff, the multiple requirements are not enforced against churches and church-affiliated organizations.

11

59. The differential enforcement policies and practices of the Internal Revenue Service, under the direction of the Defendant, constitute discrimination against non-religious non-profit organizations solely on the basis of religious criteria.

60. The differential and discriminatory policies and practices of the Internal Revenue Service in regard to enforcement of the requirements to maintain § 501(c)(3) status constitute preference for religion that is prohibited by the Establishment Clause.

61. The information return exemption given to churches and other religious organizations constitutes discrimination on the basis of religion in violation of the Establishment Clause.

62. The Establishment Clause of the First Amendment to the United States Constitution prohibits governmental preferences for, endorsement of, and discrimination in favor of churches and religious organizations.

63. Here, the revocation of Plaintiff's tax-exempt status violated the Establishment Clause, as well as the Equal Protection rights of the Plaintiff.

64. The Defendant, therefore, should be enjoined from continuing to discriminate in favor of churches and affiliated religious organizations; the information return requirement should be declared unconstitutional in its church-biased form; the Plaintiff's tax-exempt status should be reinstated; and the preferential filing exemption for churches and affiliated religious organizations should be enjoined.

WHEREFORE, the Plaintiff demands judgment as follows:

A. Declaring that exemptions from the annual information filing requirements of § 6033 violate the Establishment Clause of the First Amendment to the United States Constitution;

B. Declaring that the Defendant revoked Plaintiff's tax-exempt status in violation of the Establishment Clause and the Equal Protection rights of Plaintiff;

C.      Ordering the Plaintiff's tax-exempt status reinstated;

D.      Enjoining the Defendant and the Internal Revenue Service from continuing to preferentially exempt churches and other affiliated religious organizations from annual information filings required of other non-profit organizations under §501(c)(3);

E.      Awarding the Plaintiff its reasonable costs and disbursements of this action as allowed by law; and

F.      Awarding such further relief as the Court deems just and equitable.


Dated this 11th day of October, 2018.


                                        */s/ Richard L. Bolton*
                                        Richard L. Bolton
                                        Federal Bar No. WI0034
                                        Email: rbolton@boardmanclark.com
                                        BOARDMAN & CLARK LLP
                                        1 South Pinckney Street, Suite 410
                                        P. O. Box 927
                                        Madison, WI 53701-0927
                                        Telephone:  (608) 257-9521

                                        Patrick C. Elliott (*pro hac vice* pending)
                                        Wisconsin State Bar No. 1074300
                                        Email:  patrick@ffrf.org
                                        Sam Grover (*pro hac vice* pending)
                                        Wisconsin State Bar No. 1096047
                                        Email:  sgrover@ffrf.org
                                        FREEDOM FROM RELIGION
                                        FOUNDATION, INC.
                                        P. O. Box 750
                                        Madison, Wisconsin 53701
                                        Telephone:  608-256-8900
                                        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Richard L. Bolton, hereby certify that on October 11, 2018, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

*/s/ Richard L. Bolton*
Richard L. Bolton

f:\docs\wd\26318\36\a3246986.docx