## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NONBELIEF RELIEF, INC, P.O. BOX 448 MADISON, WI53701-0448 | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 18-CV-2347-TJK |
| CHARLES P. RETTIG, COMMISSIONER OF THE INTERNAL REVENUE SERVICE, 1111 CONSTITUTION AVENUE, N.W. WASHINGTON, D.C. 20224 | ) ) ) ) | |
| Defendant. | ) ) ) | |

**SURREPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................... 1

**I.     Plaintiff has Multiple Ways to Challenge the Constitutionality of § 6033(a)(3)(A)(i).3**
A.     Plaintiff can Bring a Refund Suit or Deficiency Proceeding. ........................................... 3
B.     Congressionally-Mandated Procedure, along with Supreme Court Jurisprudence,
       Intentionally Circumscribes Avenues for Taxpayer Suits. ................................................ 4

**II.    Plaintiff's Proposed Amended Complaint Does Not Cure Its Jurisdictional Defects. 6**
A.     Plaintiff Still Lacks Standing. ......................................................................................... 6
1.     Plaintiff's Loss of Tax-Exempt Status, and Disavowal of Any Interest in Reinstatement,
       Destroys Any Possibility of Redressability. ..................................................................... 7
2.     Plaintiff's Proposed Amended Complaint Fails to Assert an Injury Caused by the
       Provision for which it Seeks Nullification. ....................................................................... 9
B.     Plaintiff Mistakenly Suggests that it has Solved its Jurisdictional Defects, but the Cases
       on which it Relies Are Inapposite. ................................................................................. 11
1.     *Texas Monthly* provides no solution to plaintiff's Article III obstacles. ........................... 11
2.     *American Atheists* requires dismissal of this suit for lack of standing. ........................... 12
3.     *Arizona Christian School* reinforces the strict requirements for Article III standing, and
       requires dismissal here. ............................................................................................... 12
4.     *Heckler v. Mathews* is equally irrelevant to plaintiff's standing argument. .................... 14
5.     *Florida Contractors* is inapposite and does not support a finding of standing here ........ 15
6.     *Finlator Powers* was incorrectly decided and is distinguishable. .................................. 16

**III.   Plaintiff's Remaining Arguments are Without Merit. ................................................ 17**
A.     Plaintiff has Failed to Establish a Waiver of Sovereign Immunity Under the
       Administrative Procedure Act. ....................................................................................... 17
B.     Plaintiff's Suit is Further Barred by Issue Preclusion, Notwithstanding Plaintiff's Claims
       to the Contrary. ............................................................................................................ 19
C.     Plaintiff's Remaining Arguments in its Reply Brief are Without Merit. .......................... 20

CONCLUSION ......................................................................................................... 21

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Abulhawa v. U.S. Dep't of Treasury*,
   239 F.Supp. 3d 24 (D.D.C. 2017) *aff'd*, No. 17-5158, 2018 WL 3446699
   (D.C. Cir. June 19, 2018) ..................................................................................................... 9

*Alexander v. 'Americans United' Inc.*,
   416 U.S. 752 (1974) ............................................................................................................ 20

*American Atheists, Inc., et al. v. City of Detroit Downtown Devel. Auth.*,
   567 F.3d 278 (6th Cir. 2009) .............................................................................................. 12

*Apache Bend Aps, Ltd. v. United States*,
   987 F.2d 1174 (5th Cir. 1993) ............................................................................................. 4

*Arizona Christian School Tuition Organization v. Winn*,
   563 U.S. 125 (2011) ..................................................................................... 5, 12, 13, 14, 16

*Bob Jones Univ. v. Simon*,
   416 U.S. 725 (1974) .................................................................................................. 4, 5, 20

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) ............................................................................................................ 17

*Cheatham v. United States*,
   92 U.S. 85 (1875) ................................................................................................................. 4

*Cohen v. United States*,
   650 F.3d 717 (D.C. Cir. 2011) ...................................................................................... 17, 18

*Conservation Force, Inc. v. Jewell*,
   733 F.3d 1200 (D.C. Cir. 2013) ....................................................................................... 7, 8

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ............................................................................................................ 16

*Del Monte Fresh Produce Co. v. United States*,
   570 F.3d 316 (D.C. Cir. 2009) ............................................................................................. 8

*Dominguez v. UAL Corp.*,
   666 F.3d 1359 (D.C. Cir. 2012) ........................................................................................... 6

*Ellis v. Jackson*,
   319 F.Supp. 3d 23 (D.D.C. 2018) ........................................................................10

*FCC v. ITT World Commc'ns, Inc.*,
   466 U.S. 463 (1984) ..........................................................................................17

*FFRF v. Koskinen*,
   72 F. Supp. 3d 963 (W.D. Wis. 2014) ...................................................10, 11, 19

*Finlator v. Powers*,
   902 F.2d 1158 (4th Cir. 1990) .......................................................................16, 17

*Flast v. Cohen*,
   392 U.S. 83 (1968).........................................................................................12, 13

*Freedom from Religion Found., Inc. v. Lew*,
   773 F.3d 815 (7th Cir. 2014) ..................................................................... *passim*

*Frothingham v. Mellon*,
   262 U.S. 447 (1923)...........................................................................................13

*Gaylor v. Mnuchin*,
   No. 181277, 2019 WL 1217647 (7th Cir. Mar. 15, 2019) .......................................3

*Grocery Mfrs. Ass'n v. EPA*,
   693 F.3d 169 (D.C. Cir. 2012)..............................................................................10

*Hagans v. Lavine*,
   415 U.S. 528 (1974)...........................................................................................13

*Heckler v. Mathews*,
   465 U.S. 728 (1984).......................................................................................14, 15

*Huron v. Berry*,
   12 F.Supp. 3d 46 (D.D.C. 2013), *aff'd sub nom. Huron v. Cobert*¸809 .................10

*Leonard v. U.S. Dep't of Def.*,
   38 F. Supp. 3d 99 (D.D.C. 2014), *aff'd*, 598 F. App'x. 9 (D.C. Cir. 2015)............8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).............................................................................................6

*Munsell v. Dep't of Agric.*,
   509 F.3d 572 (D.C. Cir. 2007)..............................................................................8

*Ne. Fla. Chapter of Assoc. Gen. Contractors v. City of Jacksonville*,
   508 U.S. 656 (1993)........................................................................................15, 16

*Petro-Chem Processing, Inc. v. EPA*,
    866 F.2d 433 (D.C. Cir.1989) ...................................................................................10

*Real Alternatives, Inc. v. U.S. Dep't Health and Human Serv.*,
    867 F.3d 338 (3d Cir. 2017) ..................................................................................9, 15

*South Carolina v. Regan*,
    465 U.S. 367 (1984) ..............................................................................................3, 17

*Texas Monthly v. Bullock*,
    489 U.S. 1 (1989) .......................................................................................................11

*United States v. L.A. Tucker Truck Lines, Inc.*,
    344 U.S. 33 (1952) .....................................................................................................13

*Valley Forge Christian Coll. v. Americans United for Separation of Church &
    State, Inc.*,
    454 U.S. 464 (1982) ..............................................................................................5, 16

*Walz v. Tax Comm'n of City of New York*,
    397 U.S. 664 (1970) ...........................................................................................13, 14

*West v. Lynch*,
    845 F.3d 1228 (D.C. Cir. 2017) ................................................................................7

*Z Street v. Koskinen*,
    791 F.3d 24 (D.C. Cir. 2015) ..................................................................................17

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 702 ........................................... 1, 17, 18, 19

Affordable Care Act .............................................................................................................9

Anti-Injunction Act, IRC § 7421(a) ...............................................................................20

Declaratory Judgement Act, 28 U.S.C §2201(a) .........................................................20

IRC § 6033 ....................................................................................................... 3, 5, 10, 11

IRC § 6212 ............................................................................................................................3

IRC § 6213 ............................................................................................................................3

IRC § 6532 ............................................................................................................................4

IRC § 7422 ................................................................................................................... 1, 3, 4

v

IRC § 7442 ......................................................................................................................1

IRC § 7428 ................................................................................................................5, 18

## INTRODUCTION

There are ways to litigate constitutional claims in tax cases. This suit is not one of them. As described below, a refund suit or a deficiency proceeding, under §§ 7422 and 7442 respectively[1] provide avenues for plaintiff to have its Establishment Clause and Equal Protection Clause claims heard. But as long as plaintiff remains a taxable corporate entity, plaintiff lacks standing; is not similarly situated to tax-exempt organizations, much less tax-exempt churches; and it lacks a cause of action under the APA.

Plaintiff's primary claimed injuries, in both its original and proposed amended complaint, are the financial consequences of losing its tax exempt status. ECF No. 1, ¶¶ 7-8, 33; ECF No. 25-2, ¶¶ 7, 33. But the allegedly unconstitutional provision of which plaintiff complains—the exemption churches receive from filing annual information returns, and which plaintiff did not receive—is not the cause of this financial harm. The relief plaintiff now seeks—nullification of that exemption—does not provide plaintiff with a remedy for its alleged harm. *See* ECF No. 25-2 Claim for Relief. It is no longer tax-exempt, has no intention of seeking reinstatement, and has not alleged that it is otherwise similarly situated to tax-exempt churches. Whether the exemption were extended to all tax-exempt entities, or is no longer available to churches, has no effect on plaintiff's claimed injury.

Plaintiff also complains of the burden it bears in having to prepare and file IRS Form 990s. ECF No. 1, ¶ 5; ECF No. 25-2, ¶ 5. And while its original complaint sought an exemption from this requirement, its proposed amended complaint seeks no relief that would alleviate this

---

[1] Hereafter, all references to "IRC" are to the Internal Revenue Code, 26 U.S.C.

claimed burden. Compare ECF No. 1, ¶ 3; ECF No. 25-2, Claim for Relief. Nor would it make any sense to do so, because plaintiff is no longer tax-exempt, and no longer has filing obligation.

With its proposed amended complaint, it adds a claim of "ongoing" unequal treatment—claiming that the return-filing exemption afforded to churches, but not afforded to secular tax-exempt entities, violates plaintiff's Equal Protection rights. ECF No. 25-2 at ¶ 47. But plaintiff is not similarly situated to tax-exempt entities, much less tax-exempt churches. By its own actions, in failing to file annual returns, and the resulting revocation of its tax-exempt status, plaintiff has no obligation to file these returns. Because plaintiff no longer seeks reinstatement, it has no risk of being subject to this filing requirement in the future. As such, even if plaintiff's claims were found meritorious, the alleged harm cannot be remedied by the relief it seeks.

Regardless of the injury plaintiff chooses to assert, it still must establish all three elements of Article III standing for each of its claims—an injury, proximately caused by the defendant, and that the relief it seeks will provide redress. And to be clear, whether plaintiff complains of Establishment Clause violations, or unequal treatment, Article III standing is a prerequisite for any constitutional claim to be heard by a federal court. As we explain, all of plaintiffs' claims are deficient in some respect, either because causation cannot be established, because the relief plaintiff seeks will not redress the alleged injury, or both.

We do not suggest that plaintiff can't have its day in court. But plaintiff must follow constitutionally and congressionally mandated rules and procedures in having its claims heard, which it has failed to do here. As such, its proposed amendment is futile, its motion for leave to amend should be denied, and defendant's motion to dismiss should be granted.

I.      **Plaintiff has Multiple Ways to Challenge the Constitutionality of § 6033(a)(3)(A)(i).**

      A.   **Plaintiff can Bring a Refund Suit or Deficiency Proceeding.**

As previously explained, as a taxable entity, plaintiff may file a refund suit pursuant to IRC § 7422, and assert its constitutional claims as the basis for a refund. *See* ECF No. 27 at 13-14. Plaintiff could also pursue a deficiency proceeding in Tax Court (*see* IRC §§ 6212, 6213), or have a "friendly donor"[2] bring a suit.

As the Supreme Court has explained, and Congress has provided, a refund suit is a time-tested route to bringing a proper cause of action. Plaintiff is abundantly aware of this option, because its sole member, Freedom From Religion Foundation ("FFRF"), has litigated and lost similar attempts at creating justiciable controversies outside the procedures Congress provided within the tax code. *Compare Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 825 (7th Cir. 2014) (plaintiffs lacked standing where they had neither claimed nor been denied a benefit) *with Gaylor v. Mnuchin*, No. 181277, 2019 WL 1217647, at *3 (7th Cir. Mar. 15, 2019) (rejecting plaintiffs' constitutional claims where they had established standing by filing a proper refund suit). Nowhere has plaintiff suggested that a refund suit or deficiency proceeding is overly-burdensome.

Plaintiff can file its annual income tax return, or amended return, in this case an IRS Form 1120. It can pay any tax due and owing, and at the same time, claim a refund in which it

---

[2] "A 'friendly donor' suit is a suit in which a donor claims that his contributions to an organization should be tax deductible because the organization's tax-exempt status had been revoked improperly." *South Carolina v. Regan*, 465 U.S. 367, 375 n. 11 (1984).

raises its constitutional claims. Once either six months have passed, or the refund claim is

denied, whichever comes first, plaintiff may then file a refund suit under § 7422(a). *See* IRC

§ 6532(a)(1).[3] Alternatively, if subject to an audit, and plaintiff receives a notice of deficiency,

plaintiff may contest that proposed liability, and raise its constitutional issues before the Tax

Court in a deficiency proceeding under § 7422. *See* IRC § 6211 et seq.

### B.   Congressionally-Mandated Procedure, along with Supreme Court Jurisprudence, Intentionally Circumscribes Avenues for Taxpayer Suits.

As previously explained, albeit in a footnote, Congress has made clear the avenues under

which taxpayers may litigate tax controversies, and the exceptions are few and far between. ECF

No. 27, n.6. "Congress has erected a complex structure to govern the administration and

enforcement of the tax laws, and has established precise standards and procedures for judicial

review of tax matters… It is obvious that the relief the plaintiffs seek, if granted, would seriously

disrupt the entire revenue process." *Apache Bend Aps, Ltd. v. United States*, 987 F.2d 1174, 1177

(5th Cir. 1993). Requiring taxpayers to adhere to the strict jurisdictional proscriptions governing

tax litigation is nothing new. "[P]owerful governmental interests [exist] in protecting the

administration of the tax system from premature judicial interference, *e.g., Cheatham v. United

States*, 92 U.S., at 88—89, and of the opportunities for review that are available." *Bob Jones

Univ. v. Simon*, 416 U.S. 725, 747–50, (1974) (refusing to engage in pre-enforcement review,

while noting the procedural challenges taxpayers face in complying with statutory prerequisites

---

[3] For example, Plaintiff could have filed its Form 990 late and the IRS would have assessed late filing penalty of $20/day (for a maximum of $10,000 or 5% of gross receipts). See 26 U.S.C. § 6652(c). Plaintiff could pay the $20 per day penalty and claim a refund on the grounds that it should not have been required to file a Form 990 at because it should have the same exemption from filing as a church.

necessary before judicial review is available: "this matter is for Congress, which is the appropriate body to weigh the relevant, policy-laden considerations, such as the harshness of the present law, the consequences of an unjustified revocation of section 501(c)(3) status, the number of organizations in any year threatened with such revocation, the comparability of those organizations to others which rely on the Service's ruling-letter program, and the litigation burden on the Service and the effect on the assessment and collection of federal taxes if the law were to be changed.). *See also Arizona Christian School Tuition Organization v. Winn,* 563 U.S. 125, 132-46 (2011) (collecting and discussing strict limitations on taxpayer standing jurisprudence); *Lew*, 773 F.3d at 824 (*citing Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982)) (internal quotations omitted) (rejecting the Fourth Circuit's view that requiring taxpayers to comply with congressionally-mandated tax procedure would be a "waste" of 'time' and would be 'unnecessary busy work,'"). Here, where Congress has made clear that unlike other revocations of tax-exempt status, revocations for failing to file annual returns are not subject to judicial review outside of a refund suit or deficiency proceeding, is no different. *See* § 7428(b)(4) (exempting § 6033(j) revocations from § 7428 declaratory relief). If an organization's tax-exempt status is revoked under § 6033(j)(1), it must reapply for reinstatement. § 6033(j)(2).

Plaintiff's jurisdictional predicament is of its own doing. And plaintiff has at its disposal the means by which to have its constitutional claims heard. There is simply no basis on which to allow taxpayer suits outside of congressionally and constitutionally authorized boundaries. Were plaintiff to have no available "opportunities for review" of its constitutional claims, different concerns would be raised. *Bob Jones* at 747-48. But that is simply not the case here.

## II.      Plaintiff's Proposed Amended Complaint Does Not Cure Its Jurisdictional Defects.

Plaintiff lacks standing because it lacks an actual injury, caused by a challenged act, which can be redressed by the relief it seeks. And, because plaintiff is no longer tax-exempt, no present controversy exists, making its claims moot. Further, plaintiff cannot establish any waiver of sovereign immunity that would allow this suit to proceed. Its reply brief has done nothing to solve these insurmountable barriers.

### A.   Plaintiff Still Lacks Standing.

In our response brief, we explained that plaintiffs only have standing if they establish the existence of (i) an injury in fact; (ii) a causal connection between the injury and the defendant's conduct; and (iii) a non-speculative likelihood that their injury will be redressed by a favorable decision. ECF No. 27 at 6 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (additional citations omitted).) Standing is a necessary predicate to any exercise of federal jurisdiction. Absent standing, the suit is not a justiciable controversy under Article III, a court lacks subject-matter jurisdiction, and the suit must be dismissed. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012).

We do not contest that generally speaking, financial consequences from loss of tax-exempt status might provide the basis on which a taxpayer could claim standing. But plaintiff's financial harm was self-created, brought about by its failure to file annual information returns, and further, it was not caused by the allegedly discriminatory subsection for which it now seeks nullification. The relief plaintiff seeks will not provide a remedy for its claimed injuries. As such, its proposed amended complaint lacks the requisite standing elements. It is therefore futile and its motion for leave to amend should be denied.

6

**1.     Plaintiff's Loss of Tax-Exempt Status, and Disavowal of Any Interest in Reinstatement, Destroys Any Possibility of Redressability.**

By unilaterally causing its tax-exempt status to be revoked, and disavowing any interest in reinstatement, the relief plaintiff seeks cannot possibly remedy the alleged injury of which it complains. *West v. Lynch*, 845 F.3d 1228, 1235 (D.C.Cir. 2017) ("Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff.") (citation and internal quotations omitted).

Without tax-exempt status, or an intention of seeking it, the relief plaintiff seeks—relief applicable only to tax-exempt entities—cannot redress its injuries. Plaintiff is a taxable entity. It has no Form 990 filing obligations. It must now file IRS Form 1120s. Any modification to disclosure requirements affecting tax-exempt entities can have no impact on plaintiff's federal tax filing requirements. Likewise, any modifications to federal filing requirements affecting certain classes of tax-exempt entities, such as churches, would be of no relevance to the validity of federal filing requirements applicable to taxable entities.

If plaintiff were seeking reinstatement, then the relief it seeks—nullification of the exemption afforded churches—could arguably place it on equal footing, in the event plaintiff's constitutional claims were found meritorious.[4] This is because plaintiff might *potentially* become tax-exempt again, making it otherwise *potentially* similarly situated to religious tax-exempt organizations, but for the obligation to file annual information returns. *Compare Conservation*

---

[4] We do not suggest that if plaintiff sought reinstatement to solve its redressability problems, it would somehow "cure" plaintiff's causation problems—the self-inflicted nature of plaintiff's claimed injury. As explained *supra,* self-inflicted harm severs any causal link between a claimed injury and the allegedly unconstitutional provision or procedure complained of.

*Force, Inc. v. Jewell*, 733 F.3d 1200, 1204-05 (D.C. Cir. 2013) (final action on applications

mooted claim for declaratory relief regarding alleged ongoing policy of delaying processing

thereof, absent evidence that plaintiffs were likely to submit additional applications in future)

*with Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324-26 (D.C. Cir. 2009)

(final action on application did not moot claim for declaratory relief regarding allegedly unlawful

and unreasonable delay in processing thereof, where plaintiff submitted evidence that it would

apply for such licenses on a continuing basis and experience similar delays in the future). But

without tax-exempt status, or any intention of seeking such status in the future, the relief plaintiff

seeks would be of no effect. *See Leonard v. U.S. Dep't of Def.*, 38 F. Supp. 3d 99, 104-05

(D.D.C. 2014), *aff'd,* 598 F. App'x. 9, 9-10 (D.C. Cir. 2015) (case challenging government's

allegedly unconstitutional prohibition against chaplain performing religious duties during

government shutdown mooted when shutdown ended, even though plaintiff had not received

declaratory and injunctive relief regarding prohibition); *Munsell v. Dep't of Agric.*, 509 F.3d 572,

581 (D.C. Cir. 2007) (plaintiffs' departure from business subject to regulation by United States

Department of Agriculture ("USDA") mooted case challenging USDA policies and regulations).

The D.C. Circuit's decision in *Conservation Force* is instructive. *Conservation Force* at

1204-05. There, because no plaintiff had either a pending application or a concrete plan to

submit an application, the plaintiffs' constitutional claims were either unripe or moot. *Id.* The

same result follows here, where plaintiff is neither a tax-exempt entity, nor does it intend to seek

reinstatement. The only remedy it seeks would not, if granted, provide redress.

And even if plaintiff were to seek reinstatement, plaintiff has failed to allege facts

establishing that it and churches are "'similarly situated with regard to the precise attribute

8

selected for accommodation.'" *See Real Alternatives, Inc. v. Dept. Health and Human Serv.*, 867 F.3d 338, 348-53 (2017) (finding secular tax-exempt entity not similarly situated to religious employers); ECF No. 25-2 generally. In denying a secular organization's Equal Protection claim—that it should receive the contraceptive coverage exemption afforded churches under the Affordable Care Act—the Third Circuit found the plaintiff, a secular tax-exempt entity, to be "…in no way like a religious denomination or one of its nontheistic counterparts—not in structure, not in aim, not in purpose, and not in function." *Id.* at 349. "Finding all single-issue non-profit organizations to be similarly situated to houses of worship based on their shared adherence to a shared position on one issue would expand religious exemptions beyond what is constitutionally required. That a legitimate purpose of the highest order—respect for religious autonomy—justifies the Exemption only underscores the inevitability of our conclusion." *Id.* at 352. Accordingly, in the absence of any factual predicates or allegations that plaintiff here, were it to regain its tax-exempt status, is similarly situated to churches, any suggestion to the contrary is unwarranted.

### 2.   Plaintiff's Proposed Amended Complaint Fails to Assert an Injury Caused by the Provision for which it Seeks Nullification.

Plaintiff cannot demonstrate causation, because the provision of which it complains is not the proximate cause of its alleged injuries in two respects.

### a.   Self-inflicted Harm Severs any Causal Link Between an Injury and an Allegedly Unconstitutional Statutory Provision.

The revocation of tax-exempt status—and any increased federal tax liabilities or potential loss of charitable contributions, which flow from that revocation—was not caused by the return-filing exemption that churches receive. *See Abulhawa v. U.S. Dep't of Treasury,* 239 F.Supp.3d

24, 36 (D.D.C. 2017) (plaintiffs failed to establish that their injuries occurred *but for* the challenged government action) *aff'd*, No. 17-5158, 2018 WL 3446699 (D.C. Cir. June 19, 2018); *Ellis v. Jackson*, 319 F.Supp.3d 23, 32 (D.D.C. 2018) ("Plaintiff's injuries are self-inflicted because they have chosen not to comply with federal income tax laws.").

Plaintiff chose to not file informational returns. It was not a direct consequence of the Service's denial of plaintiff's exemption request under § 6033(a)(3)(B). The resulting revocation of plaintiff's tax exempt status was also not a consequence of that denial, but a consequence of plaintiff's own choice to not file IRS Form 990s. Because causation is not established when the injury alleged is self-inflicted, plaintiff's proposed amended complaint is futile. *See Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 176-78 (D.C.Cir. 2012) (voluntarily incurred injury is "'self-inflicted harm' not fairly traceable to the challenged government conduct" and therefore insufficient to establish standing); *Petro–Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C.Cir.1989) (self-inflicted injury insufficient to establish standing); *Huron v. Berry*, 12 F.Supp.3d 46, 52-53, n.6 (D.D.C. 2013) (dismissing suit where plaintiff's injury was caused by its own choice, and not an action unilaterally inflicted on it), *aff'd sub nom. Huron v. Cobert*¸809 F.3d 1274 (2016) (affirming dismissal on other grounds, where plaintiff abandoned original jurisdictional argument and waived argument introduced at appellate level).

### b. Regardless of Plaintiff's Choice to Stop Filing Tax Returns, Plaintiff Would Need to Challenge the § 6033 Filing Regime in its Entirety, not Only the Exemption Afforded Churches, to Establish Causation.

With its proposed amended complaint, plaintiff now only challenges churches' *exemption* from filing annual information returns under § 6033(a)(3)(A)(i). Plaintiff only seeks to force churches to file Form 990s. ECF No. 25-2, Prayer for Relief). *See FFRF v. Koskinen*, 72 F.

10

Supp. 3d 963, 965 (W. Wis. 2014) ("The standing problem in *Lew* was that the plaintiffs were not challenging the tax; they were challenging the exemption. That is the same problem in this case. Plaintiffs are not challenging the validity of the requirement under § 6033(a)(1) to file a report; they are challenging the validity of the *exemptions* to the requirement in § 6033(a)(3)." (*citing FFRF v. Lew*, 773 F.3d 815 (7th Cir. 2014)).

But plaintiff conflates the denial of a "benefit" with the imposition of a "burden." Plaintiff states that its "tax-exempt status was revoked in violation of the Establishment Clause and the right to Equal Protection under the Fifth Amendment *based on burdens not imposed on churches*. . . ." (Dkt. No. 25-2, Proposed Am. Compl. ¶ 2). While filing Form 990 may be a "burden," the requirement is not imposed by the provision plaintiff seeks to be nullified.

**B.   Plaintiff Mistakenly Suggests that it has Solved its Jurisdictional Defects, but the Cases on which it Relies Are Inapposite.**

**1.   *Texas Monthly* provides no solution to plaintiff's Article III obstacles.**

Plaintiff repeatedly refers to *Texas Monthly v. Bullock* for the proposition that it confers standing on plaintiff. ECF No. 29 at 3-6. Yet, the taxpayer's standing in *Texas Monthly* was premised on the quintessential taxpayer controversy—a tax refund suit. *Texas Monthly v. Bullock*, 489 U.S. 1, 8 (1989). The *Texas Monthly* taxpayer followed proper tax procedure, paid the tax it disputed, and filed a tax refund suit. *Id.* Congress makes this method of relief available to all taxpayers, including plaintiff, and plaintiff is well aware of this. *See Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 825 (7th Cir. 2014); *Freedom From Religion Foundation and Triangle FFRF v. Koskinen*, 72 F.Supp.3d 963 (W.D. Wisc. 2014). Plaintiff here has that option, but has simply not chosen to pursue it.

11

### 2. *American Atheists* requires dismissal of this suit for lack of standing.

Plaintiff's reliance on *American Atheists* is an equally misguided attempt to leapfrog over the constitutional bar of Article III and argue the merits of its case. ECF No. 29 at 3. Under *American Atheists*, the Sixth Circuit would dismiss plaintiff's suit for lack of standing because it does not fall within the narrow exception to the bar against taxpayer standing set by *Flast*, and no other exceptions are available. *American Atheists, Inc., et al. v. City of Detroit Downtown Devel. Authority¸* 567 F.3d 278 284-87 (6th Cir. 2009). *American Atheists* makes clear that before any constitutional questions can be addressed, a plaintiff first must establish standing. The Sixth Circuit reiterated the fundamental prohibition against taxpayer standing to challenge the constitutionality of state or federal programs. *Id.* There, plaintiffs had standing as municipal taxpayers—a unique standing that permits taxpayers to challenge the expenditure or loss of municipal revenue. Without question, plaintiff cannot establish standing as a municipal taxpayer. Furthermore, the Sixth Circuit made clear, that even municipal taxpayers lack standing "…if the challenged local government action involves neither an appropriation or expenditure of funds…", which is precisely what plaintiff here is challenging. Plaintiff is suing the Commissioner, and not a municipality, and plaintiff is challenging a filing requirement, not an appropriation or expenditure. As such, it cannot establish standing and its claims require dismissal under *American Atheists. Id. See also Flast v. Cohen,* 392 U.S. 83, 88 (1968).

### 3. *Arizona Christian School* reinforces the strict requirements for Article III standing, and requires dismissal here.

*Arizona Christian School* also requires dismissal of this suit, because this suit neither expands the narrow *Flast* exception, nor does it provide any alternate basis under which plaintiff can establish standing. *Arizona Christian School Tuition Organization v. Winn,* 563 U.S. 125,

129-30 (2011). There, taxpayers and intervenors challenged the constitutionality of a state tuition tax credit, arguing that it impermissibility, albeit indirectly, provided money to religious schools. Maintaining the narrow confines of taxpayer standing, the Court rejected plaintiffs' claims of standing under *Flast*, because such standing requires congressional expenditures, and the tax credit system at issue did not involve any expenditures. *Id.* 138-45. Here, because plaintiff is challenging a filing requirement, and not any expenditure, *Arizona Christian School* requires dismissal.

The Court further explained that taxpayers have other avenues to establish standing in order to raise Establishment Clause challenges apart from the narrow exception set forth in *Flast*. *Id.* at 145. But in doing so, the Court distinguished cases in which standing or other potential jurisdictional defects were not addressed, from cases such as *Texas Monthly* where standing was at issue. *Id.* at 144-45 ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed.") *citing Hagans v. Lavine*, 415 U.S. 528, 235, n.5 (1974); *United States v. L.A. Tucker Truck Lines, Inc*., 344 U.S. 33, 38 (1952); *Frothingham v. Mellon*, 262 U.S. 447, 486 (1923).

Plaintiff misleadingly suggests the Court's reference to *Texas Monthly* and *Walz* is a basis on which it can establish standing, which is wrong. *See Arizona Christian School* at 144-45, discussing *Texas Monthly* and *Walz v. Tax Comm'n of City of New York,* 397 U.S. 664 (1970). *Texas Monthly* was a tax refund suit—the quintessential case in which taxpayers have standing. It is without question that a taxpayer seeking a refund of amounts it paid has a justiciable controversy—injury (in the form of allegedly unconstitutional or illegal tax collected), causation (the tax was imposed and/or collected by the taxing entity), and redressibilty (the

taxpayer plaintiff seeks a refund). *Arizona Christian School* at 144-45. By contrast, in *Walz,* standing was not addressed, making it irrelevant to plaintiff's argument. *Id.* As such, any suggestion by plaintiff that *Arizona Christian School* allows it to maintain this litigation is without merit.

### 4. *Heckler v. Mathews* is equally irrelevant to plaintiff's standing argument.

Plaintiff mistakenly relies on *Heckler v. Mathews* to assert that nullification is available as a remedy here. *Heckler v. Mathews*, 465 U.S. 728 (1984). But plaintiff again puts the cart before the horse, focusing on remedies before addressing standing overall. In *Heckler,* a male plaintiff challenged a pension provision conferring certain benefits on women but not men. The statute also provided that in the event that a court invalidated the sex-based preference, no one would get the benefit. The district court found both the pension offset provision and the severability clause unconstitutional. The Court first addressed the severability provision, and explained that it was the right to receive a benefit not subject to impermissible discrimination, rather than the right to receive a particular amount, that provided plaintiff with a cognizable injury. *Id.* at 739-40. And that injury could be remedied by placing similarly situated groups on equal footing—by extending or denying the benefit to all. In other words, "when the 'right invoked is that to equal treatment,' the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." *Id.* at 740, *quoting Iowa-Des Moines National Bank v. Bennett*, 284 U.S. 239, 247 (1931).

What plaintiff fails to acknowledge is that, unlike itself, the plaintiff in *Heckler* had an injury, caused by a statutory provision, and the relief sought would provide redress. In contrast,

plaintiff's claimed injuries cannot be remedied by the relief it seeks. As we explain, *supra,* whether plaintiff's claimed injury is financial (increased tax following revocation of its tax-exempt status, or the cost of preparing information returns), or "ongoing" unequal treatment (ostensibly being treated differently from tax-exempt churches), because plaintiff is neither a tax-exempt entity, nor does it intend to become one, relief relevant only to tax-exempt entities would be of no effect to plaintiff. Further, plaintiff and tax-exempt churches are not similarly situated, and plaintiff has alleged no facts to the contrary. *See Real Alternatives, Inc. v. Dept. Health and Human Serv.*, 867 F.3d 338, 348-53 (2017) (finding secular tax-exempt entity not similarly situated to religious employers); ECF No. 25-2 generally.

### 5.   *Florida Contractors* is inapposite and does not support a finding of standing here.

*Florida Contractors*, an Equal Protection case in which plaintiffs' injury was its inability to compete on equal footing for city contracts due to a "minority-owned" business set-aside, does not help plaintiff's standing argument, because plaintiff cannot establish that it is similarly situated to tax-exempt churches. *Ne. Fla. Chapter of Assoc. Gen. Contractors v. City of Jacksonville,* 508 U.S. 656 (1993). Plaintiffs there were unquestionably similarly situated to "members of another group." *Id.* at 665-66. The Court explained that the injury-in-fact was the barrier itself that prevented otherwise similarly situated groups from competing on equal footing, and not the inability to be awarded a contract. *Id.* at 666-67. Here, plaintiff is not similarly situated to "members of another group"—in this case churches—because it is not a tax-exempt entity and does not seek to become one. And further, even if it were tax-exempt, it has not alleged facts suggesting that it is otherwise similarly situated to a tax-exempt church. *See Real Alternatives, Inc. v. Dept. Health and Human Serv.*, 867 F.3d 338, 348-53 (2017) (finding

secular tax-exempt entity not similarly situated to religious employers). Likewise, where removal

of the 10% holdback in *Florida Contractors* would place plaintiffs on equal footing with

minority-owned contractors bidding on contracts, the remedy plaintiff seeks would not place it, a

taxable entity, on equal footing with any tax-exempt entity.

### 6. *Finlator Powers* was incorrectly decided and is distinguishable.

*Finlator Powers* is an example of a court venturing beyond the case-or-controversy

limitations of the constitution and ignoring Chief Justice Marshall's admonishment that were

judicial power the answer to "every question under the constitution," federal courts might

"…take possession of 'almost every subject proper for legislative discussion and decision.'"

*Arizona Christian School* at 133, *citing* 4 Papers of John Marshall 95 (c.Cullen ed. 1984) (quoted

in *DaimlerChrysler Corp. v. Cuno*¸ 547 U.S. 332, 341 (2006)). *Finlator v. Powers*, 902 F.2d

1158 (4th Cir.1990). There, plaintiffs challenged a state law exempting bibles from sales tax. *Id.*

at 1159. Plaintiffs had neither refused to pay the tax, nor had they paid it and sought a refund.

Despite this, the Fourth Circuit viewed these procedural requirements "unnecessary because

doing so would not "contribute in any way to our ability to decide…" the ultimate constitutional

question. In rejecting this misguided approach, the Seventh Circuit explained that regardless of

whether compliance with certain procedural requirements would add to a court's ability to

resolve a constitutional challenge was "…beside the point:"

> The Constitution does not allow federal courts to hear suits filed by plaintiffs who
> lack standing. Article III "is not merely a troublesome hurdle to be overcome if
> possible so as to reach the 'merits' of a lawsuit which a party desires to have
> adjudicated; it is a part of the basic charter promulgated by the Framers."

*Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 824–25 (7th Cir. 2014) citing *Valley*

*Forge*, 454 U.S. at 476.

16

Plaintiff has proper avenues by which to raise its constitutional issues. The Fourth Circuit's misplaced sympathies, and erroneous attempt to create efficiency in a state tax context, are misguided and should not be extended to create new federal law. Instead, this Court should heed the Seventh Circuit's rejection of *Finlator*, and require compliance with fundamental constitutional requirements. Plaintiff can pay a tax, seek a refund claim, and file a refund suit.

## III.   Plaintiff's Remaining Arguments are Without Merit.

### A.   Plaintiff has Failed to Establish a Waiver of Sovereign Immunity Under the Administrative Procedure Act.

As we have already noted (ECF No. 27, p. 12-14), the general waiver of sovereign immunity in 5 U.S.C. § 702 does not apply where, as presented here, Congress has provided an exclusive statutory framework for resolving those issues. Sovereign immunity is waived under § 702 only when "other statutory procedures for review are inadequate." *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 469 (1984) (*citing* 5 U.S.C. §§ 703, 704); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (the APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures.").

*Cohen and Z Street* are distinguishable, because in each instance, this Circuit found that taxpayers had no other procedure by which to have their claims heard. *Z Street v. Koskinen*, 791 F.3d 24 (D.C. Cir. 2015); *Cohen v. United States*, 650 F.3d 717, 730-731 (D.C. Cir. 2011) (en banc). That is not the case here. In both *Z Street* and *Cohen*, the D.C. Circuit allowed suits seeking declaratory and injunctive relief to proceed under the APA, because, as in *South Carolina v. Regan*, the plaintiffs were "unable to utilize any statutory procedure to contest the constitutionality" of the provision or procedure at issue. *South Carolina v. Regan*, 465 U.S. 367

at 387 (1984). Z Street complained of allegedly unconstitutional delay in the processing its

application for recognition of tax-exempt status. *Z Street* at 203. Although a denial of recognition

of tax exempt status is reviewable, as is the failure to grant or deny recognition within 270 days,

Congress did not provide any mechanism by which allegedly unconstitutional delay occurring

before the expiration of 270 days could be reviewed. *See* IRC § 7428 generally. Accordingly, the

suit was permitted to go forward. *Id.*

This suit is also distinguishable from *Cohen*, a "*sui generis*" case involving a post-

assessment, post-collection APA challenge to the adoption, without notice and comment, of a

procedure for refunding a conceded tax. In *Cohen*, the parties agreed that sovereign immunity

was not waived under the APA if an "adequate remedy at law exists." *Cohen* at 731. The D.C.

Circuit determined that a tax refund suit was not adequate because taxpayers were challenging

the legality of administrative procedures. *Id.* at 731-34. Emphasizing that any refund suit would

require compliance with the challenged procedure, as a prerequisite to the suit, the court in

*Cohen* concluded that no adequate remedy at law existed that would allow the plaintiffs to

challenge the method by which the procedure was promulgated. *Id.* at 731. The court reasoned

that "exhaustion has not been required where the challenge is to the adequacy of the agency

procedure itself, such that 'the question of the adequacy of the administrative remedy… [is] for

all practical purposes identical with the merits of [the plaintiff's] lawsuit.'" *Id.* at 732, quoting

from *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992), *superseded by statute as stated in Porter*

*v. Nussle*, 534 U.S. 516 (2002). That situation is not present here; plaintiff is not challenging the

constitutionality of the refund process itself. To the contrary, plaintiff has alternative and

adequate remedies to obtain judicial review of the allegedly unconstitutional provision, but

simply has chosen to not avail itself of those opportunities.

### B.  Plaintiff's Suit is Further Barred by Issue Preclusion, Notwithstanding Plaintiff's Claims to the Contrary.

Because plaintiff, through its sole member, FFRF, and its officers and directors,

previously litigated this precise question—whether an unrelated taxpayer has standing to

challenge the constitutionality of exempting churches from annual information reporting

requirements—plaintiff's claim now is barred by issue preclusion. *See Freedom From Religion*

*Foundation and Triangle FFRF v. Koskinen¸*72 F.Supp.3d 963 (W.D.Wisc. 2014); *see also*

*Freedom from Religion Foundation, Inc. v. Lew,* 773 F.3d 815 (7th Cir. 2014). Plaintiff

mistakenly suggests that pertinent facts distinguish the earlier ruling. But the procedural posture

is not distinguishable, making the earlier ruling applicable. In *FFRF v. Koskinen,* plaintiff lacked

standing because it had not sought an exemption from filing. Here, plaintiff does not have a

filing exemption, and is not challenging the denial of its exemption request. As such, plaintiff's

standing obstacle to challenge the exemption afforded churches is akin to that of FFRF.

And while plaintiff can claim to be a different legal entity, plaintiff's own evidence

establishes the lack of independence between itself and FFRF. Plaintiff is a Wisconsin

corporation, with a single "member"—FFRF, a Wisconsin non-profit corporation. *See* ECF No.

1, ¶ 4, Doc. 1-1 at pp. 15, 17-18. FFRF's officers and directors are the same officers and

directors of plaintiff: "Nonbelief Relief was incorporated in 2015, with the Freedom From

Religion Foundation as its sole member, and creating a board to carry out the donations.

Nonbelief Relief's presidency is reserved for FFRF's president… Other Board members include

Jim Zerwick, also serving on FFRF's board, and Lisa Strand, FFRF's Director of Operations."

19

https://ffrf.org/outreach/nonbelief-relief-inc (visited May 10, 2019). And FFRF and NonBelief

Relief share directors and employees, all of whom are paid by FFRF. See ECF No. 1, ¶ 4, Doc.

1-1 at p. 15; https://ffrf.org/about/getting-acquainted/ (visited May 10, 2019). The two entities

share a website: https://ffrf.org/about/getting-acquainted/itemlist/ category/604-nonbelief-relief-

inc. And FFRF now instructs plaintiff's former donors seeking to support plaintiff to contribute

directly to FFRF, which will "earmark" the funds for plaintiff. *Id.*

Plaintiff's suggestion that issue preclusion requires veil piercing is unfounded. Plaintiff

here, through its sole member, and officers and directors, had a full and fair opportunity to

litigate its standing to seek relief that has no bearing on its own circumstances. The suggestion

that FFRF, its officers and directors, are any different from plaintiff, is disingenuous. As such,

issue preclusion bars relitigating these same questions.

### C.   Plaintiff's Remaining Arguments in its Reply Brief are Without Merit.

Plaintiff mistakenly suggests that the Anti-Injunction Act and Declaratory Judgement Act

do not bar its amended complaint.[5] But suits operating as a restraint on the assessment or

collection of tax are barred by the AIA and DJA. As explained in our earlier briefing, the Court

has consistently held that declaratory and injunctive relief is not available to plaintiffs claiming

unconstitutional revocation of their tax exempt status. *See* ECF No. 19-1, 13-15 (discussing *Bob

Jones* and *Alexander v. 'Americans United' Inc.*, 416 U.S. 752 (1974)).

Plaintiff's claims and requested relief are unquestionably tax-related, stemming from the

revocation of its tax-exempt status. In its proposed amended complaint, plaintiff continues to

---

[5] We did not raise this argument in our response brief, ECF No. 27, but we address it now
in order to respond to plaintiff's misguided allegations.

allege that revocation of its tax-exempt status was "<u>revoked unconstitutionally</u>." *See* ECF No. 25-2, ¶2. The harm of which plaintiff complains is predominately tax-related: "Plaintiff has suffered and will suffer harm, detriment and disadvantage as a result of the <u>revocation of its tax-exempt status</u>, including <u>tax liabilities</u> and <u>loss of charitable donations which are no longer tax-deductible</u> by donors…" *Id.* ¶ 7. Plaintiff further complains of the tax consequences it now is suffering: "…the <u>benefits of tax-exempt status also are denied to the Plaintiff</u> as a penalty, including <u>the loss of otherwise tax-deductible donations</u> from donors. *Id.* at ¶ 38. And it seeks declaratory relief that the allegedly "unequal treatment of the Plaintiff" is ongoing—which is only relevant to plaintiff's tax status. *Id.* at Claim for Relief.

Taken as a whole, plaintiff's claims, and relief sought, plainly relate to revocation of its tax-status and the resulting tax implications. For plaintiff to now suggest that its claims are not about the assessment or collection of taxes is disingenuous. And here, where plaintiff has an alternative, congressionally authorized means by which to obtain review—a refund suit or deficiency proceeding—both the AIA and DJA bar the present suit.

## CONCLUSION

Because plaintiff's proposed amendment contains no justiciable controversy, and it cannot establish a waiver of sovereign immunity, its motion to amend should be denied. The suit should be dismissed in its entirety for the reasons set forth here, in defendant's brief in

opposition, and in defendant's motion to dismiss. *See* ECF No. 27, 19 and 19-1. A proposed

order was previously submitted. ECF No. 27-1.

      Dated: May 21, 2019

                                   Respectfully submitted,

                                   JESSIE K. LIU
                                   United States Attorney

                                   RICHARD E. ZUCKERMAN
                                   Principal Deputy Assistant Attorney General

                                   /s/ Kari M. Larson
                                   KARI M. LARSON
                                   Senior Litigation Counsel
                                   KIERAN O. CARTER
                                   Trial Attorney
                                   Tax Division
                                   U.S. Department of Justice
                                   P.O. Box 227
                                   Washington, D.C. 20044
                                   202-616-3822 (v)
                                   202-616-1920 (v)
                                   202-514-6866 (f)
                                   Kari.M.Larson@usdoj.gov
                                   Kieran.O.Carter@usdoj.gov